May it please the court, my name is Sabrina Strong of the Melvinian Meyers on behalf of Plaintiff and Appellant, the North River Insurance Company. I would like to reserve three minutes for rebuttal. This morning I intend to focus on three components of the arguments that are dispositive and require reversal of the decision below. To table set, the overarching question here is whether my client, North River, as an excess insurer can proceed on its equitable subrogation claim against a primary insurer here, James River, to recover the amount that it paid to settle a wrongful death claim on behalf of its insured after James River failed to settle within its $1 million primary policy limits. California law plainly authorizes that claim. But here the court below granted the motion to dismiss, relying on two related unpublished decisions from the NMATA Supreme Court, St. Paul and Aspen. And the court found that because the settlement was within the combined policy limits, the insured did not suffer any harm, and therefore North River, my client, cannot step into its shoes to recover any amount it paid due to James River's breach of its duty to settle. First, I will address the threshold question, making it clear that there is no conflict of law here that would trigger a choice of law analysis, and that California law should apply based on that ground alone. Second, even if St. Paul could be construed as creating a conflict of law, California law should still apply, because the California Supreme Court's choice of law analysis in Hurtado makes plain that Nevada has no interest in having the St. Paul rule applied in this dispute. And third, in the Hurtado case, California Supreme Court, I think it's best that I talk about the case to give a sense of how to analyze the issue. In Hurtado, there was a car accident. The decedent was a Mexican resident. The family sued in California against a California defendant. The California defendant argued that Mexican law should apply, because there was a limit to wrongful death damages according to Mexican law. The California Supreme Court said that rule, limiting damages, serves to benefit defendants. The defendant in that case was a California resident. Therefore, Mexico had no interest in having its law applied to the case, because it would benefit a defendant. The defendant was not the Mexican resident. It would not benefit the plaintiff, which was the Mexican resident. We have a similar issue here. Can I ask, so here you have, I can see a clear interest that Nevada has. You have Nevada Limited Partnership, I think the Alhambra place, running a Nevada apartment complex, and the incident took place in Nevada, this homicide. Why, where does California have an interest in this? Well, first of all, it's the forum state, so it automatically has an interest on that But if you look at what's being addressed here, it's not the interests of the injured in Nevada. They've been addressed. They've been taken care of. It's not, and when we look at the interest of the insured, Alhambra Place, which, by the way, is on a policy with a California insured that has been affected, and California state law is important to protect all of the insureds on the policy. It's not simply about parties. But you're seeking to, for equitable subrogation, to step into the shoes of Alhambra Place, right? Yes, Your Honor, that is what we have alleged. Which is a Nevada party, so we're, I'm still a little puzzled where the California interest lies. The choice of law analysis is not limited to parties, Your Honor. You look more broadly than that, but the facts have not been alleged as to the relationship between L.A. Pacific Place and the Alhambra, the two insureds. The primary insured on the policy is the L.A. Pacific Center. That's the primary insured. And so, of course, there are California interests at issue, which we can get to. The fact that $4 million of their excess policy, which has an aggregate limit, has been taken, it's no longer available to Alhambra Place. It's no Beyond the notion of whether or not they were out of pocket in the context of this particular settlement. So California has an interest. It's the forum state. California has an interest because of L.A. Pacific Center's role here. But regardless of that, if you look at Hurtado Who is L.A. Pacific Center? What role do they have in this case? They're the primary named insured on the policies for mortgage. Do they own Alhambra? Those facts are not developed in the record. The primary named insured is L.A. Pacific Center. And if you look at the policy, everything has to go through L.A. Pacific Center. They must have some connection to that. Right. And the record is not developed, Your Honor. But yes, the Alhambra Place is additional named insured on the policy. There's properties that are in Nevada on the policy. But the primary named insurer, like I said, is L.A. Pacific Center. And everything under the policy, the right to cancel, premium discussions, are all limited to L.A. Pacific Center. They don't belong or they're not in the rights of Alhambra Place or any other named insured on that policy. But I want to say that all of this is kind of to the side if you look at Hurtado. You've really got to look at Hurtado because the key there is, does Nevada have an interest in having its law applied? Now, the only difference in Nevada law and California law would be if you recognize St. Paul. Without recognizing St. Paul, there is no difference of law. California should apply. Yeah. Let's talk about that. So why is your main argument that because it's unpublished that there's no conflict? There are lots of reasons. And we can talk about it. Certainly, it's unpublished. But beyond that... But it's persuasive under the Nevada rules. It can be persuasive if you find it to be persuasive, Your Honor. But you've got to go through that analysis. What James River says is, of course, we have to look at it. And, of course, it's persuasive because it's what they said. It's what they said in an unpublished opinion. It is not binding precedent. And if you actually look at... Does it have to be binding precedent? I mean, Aspen Specialty cited to St. Paul River. So that, you know, it's citing to an unpublished decision of its own court. All right. So let's look. You've got to look at the analysis of the case. And if you look at the dissent that was authored by Justice Kadish, it says the majority got, quote, basic precepts of segregation wrong. And I want to talk about what the basic precept of segregation is that the majority got wrong. The majority opinion there found that because the insured's liability was paid by the insurers within their combined policy limits, the insured did not have any damages. And as Justice Kadish correctly pointed out in the dissent, that finding, quote, misapplies a fundamental presupposition of separation that the insurer's payment reflects the subrogator's insured's loss. And in making this point, Justice Kadish cited the Nevada, its own published opinion, the Nevada Supreme Court's published opinion. And there it points out that the rationale of St. Paul is directly at odds with published Nevada Supreme Court law. In Arguello, which is a 2011 Nevada Supreme Court opinion, it says, an insurer that pays its insured in full for claimed losses is subrogated by operation of law to the rights, if any, which the insured may have had against the tortfeasor, here the tortfeasor is James River, before payment was made. So if the St. Paul's, that's directly at odds with what St. Paul found. But I guess my, can I, I'm sorry to interrupt, but you know, you're citing to the dissenting justice in St. Paul Fire. And the key line that I read from St. Paul is, because settlement was within policy limits, the insured did not suffer damages to subrogate. And that's, in that opinion, by the majority holds over, over two decisions. Aren't we supposed to predict what the Nevada Supreme Court would do? And isn't this equitable subrogation claim directly on all fours? No, it's not on all fours. First of all, St. Paul was excess versus excess. This is excess versus primary. But Aspen was though, that was excess and primary. And Aspen had no choice but to follow the rationale of St. Paul because it was in the same or related case. It's an exception to an unpublished opinion. It didn't have to go through the same analysis. It was bound by the rationale. But the rationale in St. Paul is wrong. Did it say that, that it was bound by St. Paul? It's, it says it was compelling. And if you look at the rule of appellate procedure in Nevada, rule number 36, it says that there's an exception to unpublished opinions in the same or related case. They are binding law of the case. Right, right, right. There's an exception if it's binding, but did St. Paul determine that, that, uh, I'm sorry, did Aspen determine that St. Paul was binding on, on. I believe there was language in it and it was compelled to, to find as it did based on the ruling of St. Paul, Your Honor. But again, you've got to look at that when, when you're saying that I'm citing to a dissent, what I'm telling you is the dissent is citing to published Nevada Supreme Court decisions. And I just articulated the rationale. In Arguello, was that an equitable subrogation claim? The case that St. Paul is citing to? It was talking, it talked, it recognized it. It was a case where an insurer was compensated in part by an insurance company for a stolen car. But the insured then proceeded to find its own interest. And the question was, could it do that or had its rights been totally subrogated to the insurer who had already paid? The court found that it was only, that the insured was only partially compensated. So it too had a right to continue to pursue damages. But it recognized there that absolutely the insurer would have had the right to step into the shoes of the insured and recognized equitable subrogation. So I would answer yes, but I'm explaining to you the facts of the case. Your, Your Honor, St. Paul would turn, it would effectively eviscerate equitable subrogation law in Nevada. And Nevada has recognized it. Only in the insurance context. But it has been recognized in the insurance context. I don't know that that's true, Your Honor. Well, but Nevada has a long history of recognizing equitable subrogation in different circumstances. Right. I mean, I just read this case as just being unique. That is, St. Paul is just unique in its own setting. We have to focus on what the rationale is. What the court said is. The problem that I see with, with just, you know, wholeheartedly applying St. Paul is one, that was a three-judge opinion by the Nevada Supreme Court. It wasn't the five judges. Well, St. Paul had six judges, Your Honor. The Aspen case had three judges. That's correct. And so, and, and I want to talk about the composition of the court too, because that has changed. Yeah. And there's no reason to believe it would be the same. Let me ask you this. If we really have concerns about whether or not, whether or not, um, we should follow St. Paul, should we certify that question to the Nevada Supreme Court? You certainly could. But under our choice of law analysis, Your Honor, again, if you look at what the St. Paul rule is, it's intended to protect insurers against subrogation claims by one another. There is no insurer in this case that's a Nevada resident. And under Hurtado, that means Nevada doesn't have an interest in this case whatsoever. You've got to look at the Hurtado analysis and think, is the rule in St. Paul, does Nevada have an interest in having the rule in St. Paul applied here? That rule arguably protects insurers from equitable subrogation claims from each other. The insurers in this case are not Nevada residents. And under Hurtado, that means they, Nevada, does not have an interest in having St. Paul applied to this case. I see that my time is running out, Your Honor. I'll reserve unless there's further questions you'd like me to answer now. Thank you. Thank you very much, Your Honor. Good morning. May it please the Court? Jeffrey Camiso for James River. The district court correctly applied Nevada law to this dispute. Nevada citizen murdered in a Nevada apartment complex, owned and operated by a Nevada partnership. The underlying lawsuit was in Nevada court. It was settled in Nevada. That insured has been, the plaintiff in that case has been fully taken care of. The estate and the heirs. Yes, the estate. I'm sorry. The estate. I can't represent that they've been fully taken care of. Well, I mean, they settled the case and they got their money.   And now we're fighting between the insurance companies, correct? And now it is about the money, correct, Your Honor. The district court correctly dismissed James River's case because under Nevada law, an excess carrier cannot sue a primary carrier for failure to settle if that settlement happened within the combined limits. And you get that from St. Paul? I get that from St. Paul. Now, St. Paul started. An unpublished opinion. Well, Your Honor, it is unpublished and it is persuasive opinion. Why it is unpublished is a head scratcher. It looks like it started out as an en banc decision selected by the court under its rules for en banc decision. Then it looks like a justice retired so they had six judges, 4-2 majority in favor of the rule in St. Paul. The dissent makes the precise argument that my friends from North River make. The dissent did not carry the day. In this context, insurer versus insurers arguing over a settlement, Nevada Supreme Court has concluded, unlike other states, there is no equitable subrogation claim. To the extent that there are complaints about whether the Nevada Supreme Court made the right call, those can only be addressed to the Nevada legislature or to the court itself. I'm sorry, Your Honor. No, you're right. But let me just. So the two insurance companies that are involved here, neither one of them are based in Nevada, correct? That is correct. That is correct. Neither one is based in Nevada, neither one is based in California. With respect to. But the insured, the party named on the policy is in California. That's incorrect. The policy has a first named insured, which is a California company. There are additional insureds, which are separate. And that's LA Pacific Center. That is correct, Your Honor. The other insureds are separate entities and are Nevada. There's a Nevada partnership among them, which is the only entity connected to this. Under the law of California, Nevada, and the terms of the policy, each policyholder, each named insured is equal. They are treated separately. There is no such thing as the lead named insured. There are named insureds and then there are insureds by definition. So these are not, the Nevada entities are not additionally insureds? They are additional named insureds, which is to say they're not the first person on the policy. It says first named insured. That's where the first address is. Then you flip a few pages and they say additional named insureds and it lists the additional entities. Each of those companies has separate rights under this policy. Do you agree with counsel that Aspen Specialty was bound by the earlier case? Aspen Specialty was a three-judge panel under the rules of the Nevada court. I believe that that is correct. They're like an appellate court, so they're sort of bound by what the... I think that's correct, unless there's an en banc decision changing the law. I will also say that they did describe it as controlling authority and issued a writ of mandamus to the trial court to follow the rule. So it seems to me that, it seems extraordinary to suggest that Aspen and St. Paul are not the law of Nevada. Well, they're not. I wouldn't tell that to the Nevada Supreme Court, Your Honor. No, but how about to the Nevada trial courts? Are they bound to follow it? Are they bound to follow unpublished opinions? The Nevada, they are not bound. It is not binding authority. It is persuasive, but I'll say this. Persuasive authority from the highest court in your jurisdiction is pretty dang persuasive. I don't think I'd be very comfortable walking into the United States District Court and saying, well, there's an unpublished opinion by the United States Supreme Court, which is on point, but you should go ahead and ignore that. Let me ask you this. Do you think that this eliminates equitable segregation? I do not. In Nevada? I do not. Why not? This is an equitable case. Each holding is limited to its facts. This is a pretty narrow situation, and for that matter, if there was a judgment in excess of limits or some other damages alleged other than what was owed under the policy, that is a hypothetical situation. Maybe I should have clarified my question. In circumstances such as this, where the settlement is within the total combined policies between the primary and the excess, is your position that St. Paul forecloses any such claims in the future going forward? I'm only here to litigate this case, Your Honor. I don't know. Well, you're telling us that St. Paul is binding, so that must mean that this would foreclose. St. Paul forecloses any further case, any future case, where the settlement is within the combined policy limits, like here. First, let me clarify. Number one, I don't want to miss, if I misspoke, I want to be clear that under the rules of the Nevada Supreme Court, St. Paul is not binding authority. It is persuasive authority in Nevada. But in your view, it's persuasive in every future case? Unless there's some later developments in the case law from the Nevada courts. Why do you think the Nevada Supreme Court would make such a rule or make such a persuasive decision and do that in an unpublished opinion? See, Strixen's kind of odd, because they have a strong tradition of recognizing equitable subrogation across different kinds of circumstances, different industries and whatnot. I mean, they clearly recognize equitable subrogation. They absolutely do. And they look to California to help guide their approach. Except when they don't, Your Honor. Yeah, that's true. But they have a strong tradition of looking at California law. I don't know that I would, I'm not going to, I don't know that that's necessarily true. What I will say is that there are plenty of times when Nevada has looked to California law or to Arizona law or to the law of Washington or to some other state in the district. I'm sorry, Your Honor. I've lost the thread of your original question. Would you mind repeating it? So have I. Okay. I will say it was an excellent question, and I'm sorry that I lost the thread. Let me ask this. Can you respond to counsel's argument about Hurtado and why that would make the interest reside with California? I don't understand how California has any interest here. No one involved. Please start out. It's a forum. The district court is sitting in California. So presumptively, California law applies. That's where you start. That's not true, Your Honor. No? Presumptively, you follow the choice of law rules for the state of, for the state in which the district court sits. Only if there's a conflict. Still, that's the analysis. The analysis starts with the choice of law analysis. Is there a conflict? Well, counsel argues there's no conflict. Counsel's incorrect. Got it. And so the question is why? Because counsel's relying on Hurtado, and I'm asking you to address that. At least somebody in Hurtado had a connection to California. I don't know how I can do a better job of addressing the question, Your Honor. I don't see any connection to this case, to California, other than the accident that another company that's on the same policy has a California address. Nothing is alleged that ties this matter to California. I'm sorry. I just remembered your question, Your Honor. It was why did the Nevada Supreme Court choose not to publish this decision? I believe that the court probably, look, I'm speculating, so I apologize for that. I believe that the court intended to publish this decision because it was tagged from the beginning to be an en banc decision. I suspect that it's the retirement of one of the judges that made the court decide not to publish it. But again, that is speculation, most rank. That being said... I want to go back to the Hurtado question slightly. Oh, I'm sorry, Your Honor. Is my understanding correct that North River and James River both are not California residents? So the only California resident that we're dealing with in this case is L.A. Pacific Center. Is that correct? That is incorrect, Your Honor. L.A. Pacific Center is not a party to this case, is not mentioned in any of the pleadings, and is not involved. All right. I mean, that's a fair point. But am I right that L.A. Pacific Center, in terms of the entities that we have been referencing who are involved in the policy in some way, L.A. Pacific Center is a named in short in the policy that we care about. Is that the only entity connected to California, in your view? That is correct, Your Honor. And are North River or James River either one Nevada residents? No, Your Honor. Actually, I cannot... I don't know. I don't have personal knowledge of North River. I do not believe so. I don't believe that's alleged. And James River is certainly not. And other than being named on the policy, do we know anything about L.A. Pacific Center or whether they have any connection to this case otherwise? There's no allegations connecting them to this case, Your Honor. All I can say is what I said in the brief, which is they have an L.A. address and an L.A. sounding name, but they are not connected to this matter. With respect to that... So, let me ask you this. So, if we were to conclude that, you know, you look at St. Paul and the related case, and you say, well, we can't ignore those cases for purposes of, certainly for purposes of choice of law. So, it looks like there might be a conflict. But do you think it would be prudent on our part to ask the Nevada Supreme Court whether the equitable subrogation claim here is foreclosed as a result of the unpublished decision in St. Paul and the other one? It's of course the court's option to do so. I don't think it's necessary. The Nevada Supreme Court has decided this issue. We know what the Nevada Supreme Court is going to do, and the holding is the holding. The rule in the Ninth Circuit, and I believe elsewhere is, is that, you know, we don't speculate about how the court might change or how the law might change. We take the law as we find it, and the law as we find it in Nevada, is that an excess carrier cannot sue a primary carrier in equitable subrogation where the matter settles within limits. Is that because, let me ask you that, just the foundations of that point. Is that because the injured party was fully compensated, or is that because, and therefore the parties really don't suffer any loss? They paid what they had to pay under their policies? I think that's correct. The reasoning of the Nevada Supreme Court is, look, exhaustion of the limits by settlement within the limits protects the insured from the harm that the duty to settle is supposed to prevent. So, if something settles and there's no monies outside of the limits, the policyholder didn't suffer any damages, no damages to the policyholder, therefore there's no claim for the excess insurer to subrogate to. As counsel has pointed out in the dissent in St. Paul, there's an objection to that, which is to say, no, wait, the damages you should be focusing on are the ones that were prevented here. Other courts have gone the other way. Nevada has decided in this context, the context of equitable subrogation between carriers, no, it's not how it's going to work, and the reason for that could be at some level this is an insurance company, this is a commercial insurer, you accepted your premium, you're an excess carrier, you didn't pay more than your limits, you got what you bargained for. Counsel will disagree with that, I might disagree with that if rules were reversed, but none of us is in a position to tell the Nevada Supreme Court that they got Nevada law wrong. Counsel, I want to jump in on that point. So, assuming we accept that there looks like to be a conflict between Nevada and California law on that point, as you've just described, then under the choice of law analysis, a further question we have to ask is, even if there's a conflict, is it material in the sense of looking at which state is going to be more impaired by not having their law applied? That's a further question we have to ask, and when we ask that question, we look at the state's relative commitment to the laws at issue, and we look at the history and current status of those laws at issue, and here, where the Nevada rule that we're looking at that would create the conflict is unpublished and has never been made binding, doesn't that counsel against Nevada having a significant interest in, that would be harmed if we did not apply that rule? I think the, I understand what you're asking, and I'm obviously, I can't agree because it's bad for my client's position. The upshot here is, there is no interest of California in this dispute, whatsoever, so. Well, California does have a very settled rule about equitable subrogation, and so then we ask, do we have a conflict between these two states, and we say, yes, it looks like they have different principles, and then we ask, whose interest is more impacted if they don't get to have their law applied, and we set aside, for purposes of my question, set aside, like, who, where did the thing happen, and where are the parties based, and all that stuff. That's a separate question, I think. If we look at, like, which state is sort of more, and which state has invested more in the rule that we care about and that we're talking about, it seems like California has invested more in its rule because Nevada hasn't even made its rule binding. I cannot accept the premise that because California has more cases, more published decisions, and more insurance bad faith lawyers, that California has a stronger interest in Nevada in applying the law. California is a state different from Nevada. Nevada is entitled to go its own way. It has, there's gambling there, for example, it does things its own way. Other states do things their own way, and we respect it. There's still one state in the union that has contributory negligence. I do not think that it is appropriate for someone to simply say, we've put the number of opinions on a scale, and California's got more pages. It appears that I am out of time, Your Honor. Did I sufficiently answer your question? Thank you, Your Honor. Thank you. Thank you. Thank you. I want to hit a few points quickly. A federal district court sitting in diversity presumptively applies the laws of the forum state. I think that's eerie. The composition of the Nevada Supreme Court has changed. Justice Kadish, who authored the dissent, is now the presiding justice, and the other dissenter remains on the court. Only three of the four justices who participated in the majority opinion in St. Paul remain on the court, so there's no reason to believe the composition is the same, and therefore we'd have the same outcome on that ground alone. In terms of, I want to turn to the substance of the law.  I'm sorry? If we started asking those kinds of questions, why wouldn't we just certify? Why would we speculate about who's on the court and who's not on the court? If we really cared and got that far in the analysis, why wouldn't we just certify? I don't think you need to, Your Honor, because as I said, I think Hurtado's analysis is dispositive here demonstrating that Nevada does not have an interest, and therefore there's no need to certify and get into these issues. I address it to address the one argument that my colleague makes about why you should actually implement the rule of St. Paul and recognize it. He says nothing about the substance of that case or how it's upending the law of equitable subrogation in Nevada if it were to apply. The fundamental principle there, the rationale says if the insured is compensated, it has no harm. That applies, that concept is a basic precept, as Justice Kadish said, to equitable subrogation. Always the insurer is compensating the insured and then stepping into the shoes of the insured to assert a claim on its behalf effectively, the derivative claim. If the analysis is once the insurer pays the insured, there's no harm, you can't step into the shoes, that is what upends equitable subrogation law. And that's why the Supreme Court's decision, or the unpublished decision, is not persuasive. There's nothing in that case that says they recognize that what they were doing was effectively undermining the law of equitable subrogation in Nevada. But that's what the rationale of that decision would do. But when we think about whether there's a conflict between laws, are we supposed to entertain how persuasive one of those decisions might be? How does persuasiveness enter into it, whether one agrees or disagrees with Nevada, with that decision? Again, first, you don't get to that question if you don't have a conflict of laws. And I guess I would say, in trying to decide what Nevada law is, you could look at the persuasive value of the unpublished opinion to determine if, in fact, it ought to be followed such that it would create a conflict of law. And then, even if it did, Your Honor, here, because that law does not protect the interest of any Nevada resident here, that again ends the analysis. You don't need to go there. There's so many steps off the train as to why you don't need to engage and apply Nevada law here. And finally, Your Honor, I want to make sure I say this before I run out of time, and then I want to answer any other questions you may have. But here, this was decided on a motion to dismiss. There it was summary judgment. North River has not been given the opportunity to articulate other damages. We think it would be wrong to apply St. Paul. We don't think it's a binding decision and should be applied. But even if St. Paul were to apply, North River should be given the opportunity to articulate other types of damages. And I mentioned it earlier, the fact that its insureds, Alhambra Place, the Nevada Insured, and L.A. Pacific Center, don't have access to $4 million of their $10 million excess policy going forward is harm. It's an occurrence-based policy with an aggregate limit. That means if there's claims that come in relating to the 2017-2018 time period today, they are down $4 million. They don't have $4 million that they should have available to them in their excess policy because of James River's failure to comply with its duty to settle. And North River ought to be able to stand in the shoes. You're a little over now. In order to assert those rights. Thank you very much, Your Honor. If there's no further questions. No other questions. Thank you. Thank you, counsel, for your arguments.  The matter will stand submitted and in court is adjourned for a brief recess. All rise. This court stands in recess.
judges: PAEZ, FORREST, SANCHEZ